## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ESSROC CEMENT CORP.,

    Plaintiff,

     v.

CTI/D.C., INC.,

    Defendant.

Civil Action No. 08-2196 (CKK)

## MEMORANDUM OPINION
(November 9, 2009)

Plaintiff, Essroc Cement Corp. (hereinafter "Essroc"), filed the above-captioned action against Defendant, CTI/D.C., Inc. (hereinafter "CTI"), seeking monetary damages for CTI's alleged failure to pay for cement supplied to the corporation by Essroc.  Having received no response from CTI to the Complaint in this case, Essroc requested an entry of default, which the Clerk of the Court subsequently entered.  Shortly thereafter, Essroc filed a [7] Motion for Entry of Judgment by Default, which is now pending before the Court.  Before the Court had an opportunity to consider and rule upon Essroc's motion, however, CTI filed a [10] Motion to Set Aside Entry of Default and Opposition to Motion for Entry of Judgment by Default.  CTI asserts that it had no actual notice of this lawsuit until recently, at which point it timely filed the now-pending motion to set aside the entry of default.  After thoroughly reviewing the parties' submissions, including the attachments thereto, applicable case law, and the record of the case as a whole, the Court shall GRANT CTI's [10] Motion to Set Aside Entry of Default and shall DENY Essroc's [7] Motion for Entry of Judgment by Default, for the reasons set forth below.

## I. BACKGROUND

Essroc is a Pennsylvania corporation that produces and provides cement to clients throughout the United States, Canada and Puerto Rico. Complaint, Docket No. [1], ¶¶ 1, 5. CTI is a District of Columbia corporation, with facilities in both Washington, D.C. and Maryland, that provides ready mix concrete to commercial and residential developers. *Id.* ¶¶ 2, 6. As set forth in the Complaint, Essroc alleges that on or about January 23, 2008, CTI and Essroc entered into a Credit Agreement, the primary purpose of which was to enable CTI to purchase goods, materials and services — including cement — on credit from Essroc (hereinafter "Credit Agreement"). *Id.* ¶ 7 & Ex. A (copy of Credit Agreement). Based on the terms of the Credit Agreement, Essroc agreed to and did supply cement to CTI on credit. *Id.* ¶ 13. Essroc further alleges, however, that CTI failed to make the required payments for the cement as set forth under the terms of the Credit Agreement. *See id.* ¶ 14-27. According to Essroc, as of November 11, 2008, CTI owed payment and accrued Service Charges under the Credit Agreement in the amount of $586,503.49. *Id.* ¶ 27.

Essroc filed suit against CTI asserting three causes of action based upon CTI's alleged failure to pay for the cement supplied by Essroc. First, Essroc asserts a claim for breach of contract based upon CTI's alleged breach of the Credit Agreement. *Id.* ¶¶ 28-34. Second, Essroc asserts a claim in the alternative for unjust enrichment based on CTI's alleged failure to pay for the cement supplied to it by Essroc. *Id.* ¶¶ 35-39. Third and finally, Essroc asserts a claim for fraud based on allegedly false representations made by CTI's President and CEO promising that CTI would pay the amount owed by a date certain. *Id.* ¶¶ 40-46. Essroc seeks monetary damages in the amount of $552,577.77 for unpaid invoices as well as pre-judgment interest and

post-judgment interest, punitive damages and reasonable attorneys' fees and costs.  *See id.* at p.

10.

The Summons and Complaint were served on CTI, via its registered agent (CT

Corporation System), on December 19, 2008.  *See* Return of Serv./Aff., Docket No. [4].  CTI

failed to timely file an answer or otherwise respond to the Complaint.  Having received no

response, Essroc requested an entry of default, s*ee* Pl.'s Request for Entry of Default, Docket No.

[5], which the Clerk of the Court subsequently entered, *see* Clerk's Entry of Default, Docket No.

[6].  Essroc then filed a Motion for Entry of Judgment by Default.  *See* Pl.'s Mot. for Def. J.,

Docket No. [7].  Before the Court had an opportunity to consider and rule upon Essroc's motion,

however, CTI filed a Motion to Set Aside Entry of Default and Opposition to Motion for Entry of

Judgment by Default.  *See* Def.'s Mot. to Set Aside Def., Docket No. [10].  CTI asserts that it did

not have actual notice of this lawsuit until recently, at which point it timely filed the now-

pending motion to set aside the entry of default.  *See generally id.*  Essroc has filed an Opposition

to CTI's Motion to Set Aside Entry of Default.  *See* Pl.'s Opp'n, Docket No. [12].  CTI declined

to file any reply.  Accordingly, the parties' motions are fully briefed and now ripe for the Court's

review and resolution.

## II.  LEGAL STANDARD AND DISCUSSION

The Court first turns to consider CTI's Motion to Set Aside Entry of Default.  Pursuant to

Federal Rule of Civil Procedure ("Rule") 55(c), a court "may set aside an entry of default for

good cause."  "Though the decision [to set aside an entry of default] lies within the discretion of

the trial court, exercise of that discretion entails consideration of whether (1) the default was

willful, (2) a set-aside would prejudice the plaintiff, and (3) the alleged defense was meritorious."

*Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 373 (D.C. Cir. 1980).  While

these are the same factors considered in determining whether to set aside a default judgment,

courts apply a "lower standard" in evaluating a request to set aside an entry of default than is

required when the court is asked to set aside a default judgment.  *Jackson v. Beech*, 636 F.2d 831,

836 (D.C. Cir. 1980).  "Default judgments are not favored by modern courts," and "all doubts are

resolved in favor of the party seeking relief."  *Id.* at 835, 836.  *See also Int'l Painters and Allied*

*Trades Union and Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.*, 288 F. Supp. 2d 22, 25

(D.D.C. 2003) ("Default judgments are generally disfavored by courts, because entering and

enforcing judgments as a penalty for delays in filing is often contrary to the fair administration of

justice.").

A.      *The Willfulness of Default*

Turning to the first of the three factors outlined above, the Court considers whether CTI's

default in this case was willful.  "The boundary of willfulness lies somewhere between a case

involving a negligent filing erorr, which is normally considered an excusable failure to respond,

and a deliberate decision to default, which is generally not excusable."  *Int'l Painters*, 288 F.

Supp. 2d at 26 (citing *Gucci Am., Inc. v. Gold Ctr. Jewelry,* 158 F.3d 631, 634 (2d Cir. 1998)).

*See also Whittaker v. D.C.*, 228 F.R.D. 378, 380 (D.D.C. 2005).  "A finding of bad faith is not a

necessary predicate to the conclusion that a defendant acted 'willfully.'"  *Int'l Painters*, 288 F.

Supp. 2d at 26 (citing *Gucci*, 158 F.3d at 635).  Construing the facts in the light most favorable to

Defendant, as it must, the Court finds that CTI's failure to timely respond to this lawsuit was not

willful.

CTI concedes that Essroc properly and timely perfected service in this case by serving

4

CTI's registered agent, CT Corporation, with the Summons and Complaint.   *See* Def.'s Mot. to

Set Aside Def. at 1.   Nonetheless, CTI asserts that, as a result of apparent administrative errors

made by CT Corporation, CTI itself did not become aware of this action until August 10, 2009.

*See id.*   In support of this assertion, CTI submits the sworn affidavit of its President and CEO,

Darryl A. Stuckey.   *Id.*, Ex. A (Affidavit of Darryl A. Stuckey) (hereinafter "Stuckey Aff.").

According to Mr. Stuckey, although CTI had previously advised CT Corporation in writing that

CTI's office is located at 5616 St. Barnabas Road, Oxen Hill, Maryland, CT Corporation

mistakenly mailed copies of the pleadings in this case to CTI at 1516 St. Barnabas Road, Oxen

Hill, Maryland, rather than to its correct address at 5616 St. Barnabas Road.  *Id.* ¶¶ 4, 7.  As a

result, Mr. Stuckey avers that CTI never received a copy of the Summons and Complaint in this

case or of Essroc's Request for Entry of Default.  *Id.* ¶ 6.  Mr. Stuckey states that CTI finally

become aware of this lawsuit on August 10, 2009, when it received a copy of Essroc's July 27,

2009 motion for a status conference, which CT Corporation forwarded to the correct address.  *Id.*

¶ 6.  Shortly thereafter, on August 14, 2009, CTI filed its motion seeking to set aside the entry of

default.

Essroc responds that the Court should reject CTI's assertion that it did not receive actual

notice of this lawsuit until recently because its explanation is neither sufficiently detailed nor

adequately supported by record evidence.  *See* Pl.'s Opp'n at 4-5.  Specifically, Essroc argues

that CTI has offered no explanation as to why, after months of allegedly using an incorrect

address, its registered agent finally mailed Essroc's July 27, 2009 motion for a status conference

to the correct address or why that motion was not allegedly received until two weeks after it was

filed.  *Id.* at 4.  Essroc also complains that CTI has not provided any evidence from the CT

Corporation itself supporting CTI's claim that the pleadings were mistakenly mailed by CT Corporation to an incorrect address. *Id.* at 4-5. Finally, Essroc contends that CTI's explanation should not be credited because an online search conducted by Essroc indicates that the address to which CTI claims the pleadings were incorrectly sent (namely, 1516 St. Barnabas Road) does not exist, yet there is no evidence that any pleadings were returned as undeliverable to CT Corporation. *Id.* at 5.

Although the Court agrees that CTI would have been better served to have provided a more detailed explanation of the apparent administrative errors that prevented it from receiving actual timely notice of the lawsuit, the Court concludes that CTI has nonetheless sufficiently demonstrated a lack of willfulness on its part. CTI has proffered the sworn testimony of its President and CEO averring that no one at the corporation received notice of the lawsuit until August 10, 2009, and there is no evidence in the present record contradicting or rebutting Mr. Stuckey's affidavit. Accordingly, the only evidence now before the Court is the sworn and unrebutted testimony of CTI's President and CEO stating that the corporation did not receive a copy of the Complaint or Summons and did not have actual notice of the lawsuit until recently. To the extent the lack of detail in the record causes some doubt as to the exact reasons why CTI did not receive more timely notice of this lawsuit, the D.C. Circuit has made clear that, "[o]n a motion for relief from entry of a default . . ., all doubts are resolved in favor of the party seeking relief." *Jackson*, 636 F.2d at 836. Viewing the facts in a light most favorable to CTI, the Court therefore finds that CTI was not willful in its default. Accordingly, this first factor weighs in favor of setting aside the entry of default.

B.      *The Prejudice to Plaintiff if Default is Set Aside*

The Court turns next to consider the prejudice to Essroc if the entry of default is vacated.

"'[D]elay in and of itself does not constitute prejudice.'"  *Capital Yacht Club v. Vessel AVIVA*,

228 F.RD. 389, 393 (D.D.C. 2005) (quoting *KPW & Assocs., Inc. v. Designs By FMC, Inc.*, 318

F.3d 1, 15 (1st Cir. 2003)).  In evaluating the prejudice to a plaintiff in setting aside a default, a

court should consider — not the mere fact of delay itself — but rather any effects such delay may

have on the plaintiff (for example, loss of evidence or increased difficulties in obtaining

discovery).  *See Int'l Painters*, 288 F. Supp. 2d at 31.

In this case, Essroc asserts that it will suffer substantial prejudice if the entry of default is

vacated for three reasons.  First, Essroc asserts that it will be "force[d] to expend additional time

and money to collect on [its] claim."  Pl.'s Opp'n at 5.  It is well established, however, that "delay

and legal costs are part and parcel of litigation and typically do not constitute prejudice for the

purposes of Rule 55(c)."  *Capital Yacht Club*, 228 F.RD. at 394.

Second, Essroc argues that "Defendant's financial condition, which is central to Plaintiff's

ability to recover on its claims, may deteriorate over time, reducing (or potentially eliminating)

Plaintiff's ability to recover damages."  Pl.'s Opp'n at 6.  There is no evidence in the record,

however, that CTI is in fact experiencing financial difficulties or is likely to do so in the near

future.  Although courts have found that a decision vacating default may prejudice the plaintiff

where there is affirmative evidence that the defendant is virtually insolvent or has been placed in

receivership, *see, e.g., Canales v. A.H.R.E., Inc.*, 254 F.R.D. 1, 10 (D.D.C. 2008) (finding

prejudice where defendant corporation indicated it was "fighting bankruptcy" and was "virtually

insolvent"); *Gillespie v. Capitol Reprographics, LLC*, 573 F. Supp. 2d 80, 86 (D.D.C. 2008)

7

(finding prejudice where the defendant corporation had been placed in receivership), the Court is not persuaded that Essroc's own unsupported speculation that CTI *may* suffer financial distress in the future is sufficient to demonstrate prejudice.

Third and finally, Essroc argues that delay in this case "may make discovery more difficult, as officers and employees involved with the subject matter of the claim may no longer work for Defendant and evidence, including invoices and delivery receipts, may become lost or more difficult to obtain." Pl.'s Opp'n at 6. Again, however, there is nothing in the record to suggest that there is an actual and imminent threat that evidence may be lost. Absent evidence that such difficulties are likely, the Court declines to find that Essroc's ability to successfully prosecute this case on the merits has been harmed. *Cf. Canales*, 254 F.R.D. at 11 (finding plaintiff would be prejudiced by decision setting aside default judgment where the defendant corporation admitted it had closed its offices and laid off its employees, thereby making it more difficult to locate key witnesses and evidence). In addition, it appears that much of the material evidence in this case, such as the Credit Agreement and payment invoices, are likely to be within Essroc's — and not CTI's — possession. The Court therefore concludes that Essroc is not likely to suffer significant prejudice if the entry of default against CTI is set aside.

C.     *Whether Defendant Has Asserted a Meritorious Defense*

Finally, the Court turns to consider whether CTI has asserted a meritorious defense. "Likelihood of success is not the measure." *Keegel*, 627 F.2d at 374. Rather, the defendant's "allegations are meritorious if they contain 'even a hint of a suggestion,' which, if proven at trial, would constitute a complete defense." *Id.* In this case, CTI has attached to its Motion to Set Aside Entry of Default a Verified Answer, in which CTI denies allegations that it entered into a

8

Credit Agreement with Essroc or failed to make required payments as set forth in the Complaint. *See* Def.'s Mot. to Set Aside Def., Att. A (Verified Answer) (hereinafter "Ans."), ¶¶ 6, 13-19. CTI also denies that its CEO and President, Mr. Stuckey, made any false representations to Essroc. *Id.* ¶¶ 22, 24-27.  CTI's primary defense thus appears to be that it does not owe any monies to Essroc — either because it did not sign the Credit Agreement and/or because it did not fail to make any required payments.[1]

Essroc responds that CTI's denials in its Answer are insufficient.  Pl.'s Opp'n at 6-8. While the Court agrees that CTI has provided "somewhat broad and conclusory" allegations in support of its claim of a meritorious defense, the D.C. Circuit has held under analogous circumstances that a defendant who has submitted an answer denying the plaintiff's allegations has "adequately [met] the meritorious defense criterion for setting aside the default."  *See Keegel*, 627 F.2d at 374 ("In their proposed answer, defendants have alleged lack of subject matter jurisdiction and denied any misrepresentations, fraudulent acts, or securities law violations. Though somewhat broad and conclusory, those allegations [are] adequate[].").  *See also Canales*, 254 F.R.D. at 11 (finding that "even though [defendant] provides only a superficial analysis" of its

---

[1] In addition to generally denying in its Verified Answer that it entered into any Credit Agreement or that any misrepresentations or other fraudulent conduct occurred, CTI also asserts more specifically that: (1) "the Complaint should be dismissed for failure to state a claim upon which relief can be granted in that Plaintiff is not alleged to be, and in fact is not a corporation qualified to do business in the District of Columbia," Ans. at 1; (2) "the Credit Agreement does not bear the signature of any officer of Defendant," *id.* ¶ 6; and (3) "Plaintiff's claim for equitable relief (unjust enrichment) should be dismissed because Plaintiff has failed to provide Defendant with a benefit that is commensurate with Plaintiff's demand," *id.* at p. 1.  The Court agrees with Essroc that these allegations, even if true, do not appear to constitute a complete defense to the instant action.  *See* Pl.'s Opp'n at 6-8.  Nonetheless, given that CTI has also generally denied that it entered into the Credit Agreement with Essroc or that it engaged in any fraudulent or unlawful conduct, the Court finds that CTI has sufficiently asserted a meritorious defense, as discussed above.

alleged defense, the defendant's "assertion is sufficient to satisfy the third *Jackson* criteria").

Accordingly, although CTI's denials are of a general nature, the Court finds that CTI has provided

the minimum "hint of a suggestion" of a meritorious defense required under this third factor.

In summary, then, the Court finds that each of the three factors outlined above counsels in

favor of setting aside the entry of default in this case.  CTI has therefore demonstrated "good

cause" sufficient to warrant setting aside the Clerk's entry of default in this case, and CTI's [10]

Motion to Set Aside Entry of Default is GRANTED.  Finally, in light of this decision, Essroc's [7]

Motion for Entry of Judgment by Default is DENIED.  The Court shall, by separate order, set an

Initial Scheduling Conference in this case.

### III.  CONCLUSION

For the reasons set forth above, CTI's [10] Motion to Set Aside Entry of Default is

GRANTED, and Essroc's [7] Motion for Entry of Judgment by Default is DENIED.  An

appropriate Order accompanies this Memorandum Opinion.

Date:   November 9, 2009

                             _____/s/_____
                             COLLEEN KOLLAR-KOTELLY
                             United States District Judge

10